UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

STEUBEN FOODS, INCORPORATED,

                              Plaintiff,

v.                                                                          Civ. No. _____

UNITED STATES OF AMERICA,
UNITED STATES INTERNAL REVENUE
SERVICE, AND CHARLES RETTIG AS
COMMISSIONER OF THE UNITED
STATES INTERNAL REVENUE SERVICE,

                              Defendants.
_____

# COMPLAINT

Plaintiff Steuben Foods, Incorporated ("Steuben"), for its Complaint against the United States of America, the United States Internal Revenue Service, and Charles Rettig, as Commissioner of the United States Internal Revenue Service (collectively, the "Defendants"), alleges as follows:

## Introduction

1. This is an action to recover a tax overpayment of approximately $573,192, plus interest, owed to Steuben for tax years 2010, 2011, 2014, 2015, and 2016, each ended July 31 ("The Tax Years").

2. For the Tax Years, Steuben properly deducted from income a total of $1,794,638 (the "Deductions") for contributions made by Steuben to a Code Section 501(c)(4) organization called EMPact America, Inc. (the "EMPact").

3. The Internal Revenue Service (the "Service"), after examining Steuben's IRS Forms 1120 for the Tax Years, disallowed the Deductions by concluding that Steuben's contributions to EMPact were not ordinary and necessary business expenses of the company.

4. The Service was wrong. Accordingly, on or about July 25, 2019, Steuben filed Amended U.S. Corporation Income Tax Returns on Form 1120X for the Tax Years (the "Amended Returns") to recover a total refund of $573,192 of tax that the Service had incorrectly directed Steuben to pay, plus interest. *See* **Exhibit 1** (explanatory addenda filed with amended returns for 2010, 2011, 2014, 2015, and 2016).

5. By letters dated, October 2, 2019, the Service denied Steuben's refund claims set forth in the Amended Returns. *See* **Exhibit 2** (refund disallowance letters for 2010, 2011, 2014, 2015, and 2016.

6. Steuben now pursues this refund action to recover the $573,192 of tax, plus interest, that the Defendants improperly directed Steuben to pay.

## **Jurisdiction**

7. This Court has subject matter jurisdiction under 28 U.S.C. Section 1346(a)(1) and 26 U.S.C. Sections 6402 and 7422.

8. Venue is proper in this District under 28 U.S.C. Sections 1346(a)(1), 1402, and 1391(b).

**Facts**

9. Steuben is a New York corporation with a principal place of business at 1150 Maple Road, Elma, NY 14059. Steuben's Taxpayer identification no. is 22-2407431.

10. Steuben specializes in low-acid aseptic products, with a focus on manufacturing dairy and plant-based beverages. Low-acid aseptic products have a long shelf-life and typically do not require refrigeration. Steuben, public agencies, Steuben customers, and Steuben suppliers have invested over $250 million in Steuben's facility.

11. EMPact is a not-for-profit corporation with tax exempt status under Code section 501(c)(4). EMPact was founded in 2009 and is committed to protecting Western New York's electrical grid from an electromagnetic pulse ("EMP") and preparing the public in the event an EMP were to occur.

12. EMPact educates the public about the risks of an EMP, which could occur either from a solar flare or nuclear weapon detonated high above the Earth's atmosphere. A large EMP would cripple the electrical grid over a wide area, possibly for many years.

13. EMPact, Steuben, and other sponsors regularly present events on disaster preparedness, which are attended both by the general public and Steuben's employees.

14. A large number of products that Steuben produces each year are nutrient-dense dairy products, which as a result of Steuben's low acid aseptic packaging

technology, do not require refrigeration and have a shelf life of over one year. The targeted audiences of EMPact-related events are exactly those customers and constituents who purchase the products Steuben manufactures, and Steuben has received, among other things, tremendous exposure of its products and brand through sponsorship of EMPact.

15. During the Tax Years, Steuben contributed a total of $1,794,638 to EMPact. Steuben properly deducted $1,794,638 as an ordinary and necessary business expense on its tax returns for the Tax Years. The amount deducted for each of the Tax Years is as follows: 7/31/2010: $785,000; 7/31/2011: $344,638; 7/31/2014: $325,000; 7/31/2015: $205,000; and, 7/31/2016: $135,000.

16. Thereafter, an examining agent of the Service audited Steuben's IRS Forms 1120 for the Tax Years and concluded that the amounts paid by Steuben to EMPact ($1,794,638) were not deductible as ordinary and necessary business expenses. Steuben informed the agent that it disagreed with the agent's tax position. Steuben also presented compelling arguments supporting deductibility. The Service nevertheless proposed an adjustment to disallow the deduction for each year.

17. Steuben protested the Service's proposed adjustment to IRS Appeals, but Steuben could not reach an acceptable resolution with IRS Appeals. As a result, the Service assessed tax resulting from its adjustment to disallow the deduction Steuben took for each of the Tax Years for the contributions to EMPact, and Steuben submitted payment of the additional tax assessed, and the interest charged thereon.

18.     Steuben submitted the Amended Tax Returns to recover, as refunds, $573,192 of the tax that the Service had incorrectly directed Steuben to pay, plus interest.  *See* **Ex. 1.**

19.     By letters dated October 2, 2019, the Service denied the refund claims set forth in the Amended Returns.  *See* **Ex. 2.**

### Basis for Refund Claim

20.     Steuben's contributions to EMPact were deductible as ordinary and necessary business expenses during the Tax Years.  The Defendants erred in disallowing those deductions.

21.     Steuben's contributions to EMPact were ordinary and necessary business expenses because, among other reasons, the contributions substantially increased the brand recognition of the company and the company's product lines and enhanced the company's standing in the community.

22.     The Service erroneously concluded that contributions to EMPact were not directly related to Steuben's food and beverage processing business because Steuben was allegedly not involved with scientific research of EMPs.  But the Service failed to recognize that Steuben has been at the forefront of packaging food and beverage products that require no refrigeration and have a long shelf life, which is attractive to consumers interested in disaster preparedness.

23. Through disaster preparedness events sponsored by Steuben and by EMPact, Steuben enjoyed increased exposure for its products during the Tax Years. Steuben's name was featured on promotional material associated with several EMPact functions. Steuben's support of EMPact provided marketing channels for the company and generated interest in the very types of products that the company manufactures among a target market segment.

24. Furthermore, Steuben's contributions to EMPact helped to reduce the risk of an EMP damaging the electrical grid. With Steuben's support, EMPact is regularly involved in efforts to inform the public, along with utilities, of the importance of using EMP-resistant electrical equipment. These risk-reduction measures are essential to Steuben's business, as a widespread electrical outage caused by an EMP would materially disrupt Steuben's production.

25. EMPact also provided Steuben's employees with extensive education and training, which promotes greater collaboration, a sense of camaraderie and common mission among employees. Steuben's EMPact contributions helped to create a more productive work force.

26. Steuben's contributions to EMPact created visibility and goodwill in the community, with government agencies, with business partners, and with vendors. Steuben has been featured both on television and in the news regarding its association with EMP risk reduction and its contribution to disaster preparedness.

27. The Service's conclusion that Steuben's contributions to EMPact were not ordinary and necessary expenses is unsupported by the facts or legal authority.

## FIRST CAUSE OF ACTION
### (Collection of Tax Overpayment)

28. Steuben repeats and re-alleges the preceding paragraphs as if fully set forth herein.

29. The Defendants erroneously disallowed a total of $1,794,638 in ordinary and necessary business expense deductions for the Tax Years. As a result, Steuben overpaid $573,192 of additional tax, plus interest.

30. Steuben objected to the Defendants' conclusions and paid the resulting tax, with interest.

31. Steuben has satisfied all conditions precedent to suit, including those set forth in 26 U.S.C. Sections 6532 and 7422 and in 26 C.F.R. 301.6402-3. Steuben paid the challenged tax, with interest, and filed claims with the Service for refunds of the tax. The Service denied Steuben's claims for refunds.

32. Accordingly, Steuben is entitled to a refund of $573,192, plus interest, for the additional tax that it paid for the Tax Years.

## JURY DEMAND

33. Steuben demands trial by jury on all issues and facts triable to a jury.

## PRAYER FOR RELIEF

**WHEREFORE**, Steuben demands judgment against the Defendants as follows:

(1) an award of $573,192, plus interest;

(2) the costs and disbursements of this action, including reasonable attorneys' fees; and

(3) such other and further relief as the Court may deem just and proper.

Dated: Buffalo, New York
September 29, 2021

**HODGSON RUSS LLP**
*Attorneys for Plaintiff*


By: s/ Rob Fluskey
Robert J. Fluskey, Jr.
The Guaranty Building
140 Pearl Street, Suite 100
Buffalo, New York 14202
(716) 856-4000
*rfluskey@hodgsonruss.com*

15975594v3